[Docket No. 54]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

JAMES MONAGHAN,

   Plaintiff,

  v.

COUNTY OF GLOUCESTER,
AUGUST E. KNESTAUT, and
JOHN DOES 1 THROUGH 50,

   Defendants.

Civil No. 18-15166 (RMB/SAK)

**OPINION**

**APPEARANCES**

Sebastian B. Ionno, Esq.
Ionno & Higbee, LLC
140 S. Broadway, Suite 5
Pitman, NJ 08071

  *On behalf of Plaintiff James Monaghan*

Sean P. O'Brien, Esq.
William F. Cook, Esq.
Kayla L. Louis, Esq.
Brown & Connery, LLP
360 Haddon Ave.
Westmont, NJ 08108

  *On behalf of Defendants County of Gloucester and August E. Knestaut*

**BUMB, U.S. District Judge**

  Service in the National Guard is regularly performed by military service men

and women at both the federal and state levels, so not every National Guard training

necessarily constitutes mandatory military service pursuant to the authority of federal

law. Likewise, not every employment squabble is necessarily rooted in an employer's discriminatory intent or animus. Federal law prohibiting discriminatory conduct in the employment context is applicable only in certain circumstances where the threshold requirements under the applicable statute are met, a point the current controversy illuminates well.

In the present action, the plaintiff alleges that he was discriminated against in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA") for his membership in the New Jersey National Guard. The defendants reject this contention, arguing that his 20-day suspension from employment was based on a well-documented instance of insubordination regarding a day off from work for military training that was mandated pursuant to the authority of state law, such that Plaintiff's claims arise outside of the ambit of USERRA altogether. Now before the Court is the Motion for Summary Judgment by all Defendants. [Docket No. 54.] For the reasons set forth below, Defendants' motion shall be **granted**, in part, and **denied**, in part.

## I.   FACTUAL BACKGROUND

The Court recites herein only those facts relevant to its consideration of Defendants' present motion, and such facts are generally not in dispute except as specified below. On July 16, 2001, Plaintiff James Monaghan ("Plaintiff" or "Monaghan") began his employment with the Gloucester County Sheriff's Office ("GCSO") as a Sheriff's Officer. [Docket No. 54-4 ("Defendants' Statement of Facts") ¶¶ 1–2.] Monaghan was employed as a GCSO Sheriff's Officer until his

2

recent retirement. [Docket No. 65-1 ("Defendants' Response to Plaintiff's Statement of Facts") ¶ 1.] During the term of his employment with GCSO, Monaghan also served with the New Jersey Army National Guard and was deployed overseas for military service on approximately five (5) different occasions, including to Iraq, Egypt, Qatar, and Albania. [Docket No. 61-5 ("Plaintiff's Statement of Facts") ¶¶ 1–3.]

Beginning in or around January 2013, Defendant August E. Knestaut ("Knestaut") served as one of the two undersheriffs for Defendant the County of Gloucester (the "County," and together with Knestaut, "Defendants"), and along with Undersheriff Andre L. Bay, Undersheriff Knestaut was responsible for, among other things, overseeing administrative operations and assignments within GCSO, including reviewing various requests for leave by GCSO employees. [Defendants' Statement of Facts ¶¶ 4–7.] Plaintiff admits that the County maintains a Military Leave Policy for its employees who serve in the military, and that such policy generally provides for time-off "in accordance with applicable federal and state laws and regulations." [Docket No. 61-4 ("Plaintiff's Response to Defendants' Statement of Facts") ¶¶ 8–12.] When making a request for military leave pursuant to GCSO's policy, an employee would customarily submit GCSO's mandated leave request form and attach the applicable military order for service; however, an employee could also submit the applicable military order for service upon his return from military duty if he did not have it in hand when making the initial request for leave. [*Id.* ¶ 21.]

3

On December 4, 2013, Plaintiff submitted a request for military leave for December 5, 2013. [Defendants' Statement of Facts ¶ 34.] When making his leave request, Plaintiff submitted GCSO's mandated leave request form, but did not submit any military orders for his service. [*Id.* ¶¶ 34–35.] Two other GCSO Sherriff's Officers also requested military leave for December 5, 2013, but unlike Plaintiff, both submitted military orders when making their respective requests for leave, so GCSO supervisors were aware and were able to confirm their military service when they did not show up to work on December 5, 2013. [*Id.* ¶ 41.]

On the morning of December 5, 2013, Plaintiff reported to the Battle Lab on the Fort Dix base in New Jersey. [*Id.* ¶ 38.] Lieutenant Kimberly Reichert observed that Plaintiff was absent from work, reported it within GCSO, and sometime later that same morning, Undersheriff Knestaut ordered Plaintiff to provide GCSO with the military order for his service by the close of business that day. [*Id.* ¶¶ 39–45.] Later that afternoon, Plaintiff faxed a "Memorandum for Record" signed by military personnel officer Sergeant Kyle D. Layton, stating that Plaintiff was "observed" at training; critically, however, the memorandum did not expressly state that Plaintiff was ordered or directed to report for military training or duty that day. [*Id.* ¶¶ 49, 51.]

The next day, Friday, December 6, 2013, Undersheriff Knestaut sent Plaintiff an email seeking clarification as to whether the Memorandum of Record constituted a valid military order, asking for Sergeant Layton's contact information, and directing Plaintiff to confirm whether Sergeant Layton was Plaintiff's commanding officer or had the authority to issue the memorandum or otherwise order Plaintiff to

appear for military training. [*Id.* ¶¶ 56–58.] Undersheriff Knestaut also directed Plaintiff to respond to his email by no later than Monday, December 9, 2013, at 5:00 p.m. [*Id.* ¶ 59.] However, Plaintiff did not work again until Tuesday, December 10, 2013, and allegedly did not see—and undisputedly did not respond to—Undersheriff Knestaut's email until then. [Plaintiff's Response to Defendants' Statement of Facts ¶¶ 60–61.] Undersheriff Knestaut later confirmed that Plaintiff was not required to monitor his work email on the days he was not scheduled to work. [Plaintiff's Statement of Facts ¶¶ 53–54.] Defendants allege that "[i]n his response to Undersheriff Knestaut, Plaintiff was unable to establish whether the Memorandum for Record was a valid military order," a fact Plaintiff denies, arguing instead that the "whole issue of a Memorandum for [R]ecord or order is nothing but a red haring [sic] to distract from the real issue" of discrimination. [Defendants' Statement of Facts ¶ 68; Plaintiff's Response to Defendants' Statement of Facts ¶ 68.]

When Plaintiff did respond to Undersheriff Knestaut's email upon his return to work on December 10, 2013, he informed Undersheriff Knestaut that "the Memorandum for Record is a company level letter that requires an appearance for military duty," and he provided Undersheriff Knestaut with the contact information for Sergeant Layton and Plaintiff's commanding officer, Major Robert J. Yencha. [Defendants' Statement of Facts ¶ 64.] Knestaut later testified that he had seen many memoranda like the one submitted by Plaintiff during his time as an undersheriff, but a major difference was that the one Plaintiff submitted did not include the word "ordered." [Plaintiff's Statement of Facts ¶ 58.] Undersheriff Knestaut then

5

attempted to contact either Sergeant Layton or Major Yencha for further clarification but was not able to reach them at such time. [Defendants' Statement of Facts ¶¶ 69–70.]

On December 23, 2013, Undersheriff Knestaut sent another email to Plaintiff, informing him that his prior response was insufficient, directing Plaintiff to answer the questions from his prior email with "yes" or "no," and asking three additional questions regarding whether Plaintiff was ordered and required to report for "active duty training" on December 5, 2013. [Docket No. 20 ("Second Amended Complaint"), Ex. E.] Plaintiff sent an email in response, attempting to answer some of Knestaut's questions, but also stating that he had never been questioned or treated this way before and expressing that he felt like he was being targeted and harassed. [*Id.*, Ex. F.] Several hours later, Plaintiff sent Undersheriff Knestaut a second email, which is at the forefront of this dispute and is reproduced below:

> One more thing, who are you to tell me how you want your questions to be answered!!!??? I'll answer your "questions" any way I please as long as I feel they are answered. I am not under any investigation that I'm aware of nor am I on the stand testifying so you do not get to dictate to me of how you want your questions to be answered. Try reading my e-mail again, I answered your questions. I don't have to list them in order or number them at all just as long as I answered them. They maybe [sic] not in the order you asked or how they were answered but the questions were answered. If they weren't, I also provided you with the contact info of the individual who could answer any and all of your questions out of common courtesy since just maybe U/S Bay and yourself aren't familiar with the procedures pertaining to the military. So much for me being considerate. However, I do see a mediocre attempt at interrogation and I don't appreciate it [n]or is it warranted.

[*Id.*] Defendants maintain that by sending the above email, Plaintiff was insubordinate in violation of GCSO's Rules of Conduct, but Plaintiff maintains that

he "was expressing his opinion after weeks of relentless harassment by Knestaut over one training day . . . [which] continued for years." [Plaintiff's Response to Defendants' Statement of Facts ¶ 81.] According to Plaintiff's testimony, prior to Undersheriff Knestaut joining GCSO, Plaintiff had worked at GCSO for 13-15 years and had turned in these same types of letters of memorandum as he did in this instance, but never once were they questioned. [Plaintiff's Statement of Facts ¶ 25.] Plaintiff points out that since this incident with Monaghan, Undersheriff Knestaut has followed up on several occasions with other Sherriff's Officers taking military leave to get paperwork showing that they had each been "ordered" to perform military service. [*Id.* ¶ 48.] Defendants do not dispute this fact. [Defendants' Response to Plaintiff's Statement of Facts ¶ 48.]

GCSO continued to follow-up with the New Jersey National Guard throughout 2014 regarding Plaintiff's December 5, 2013, training day, which Plaintiff alleges included "harassing and borderline-defamatory calls to Plaintiff's superior officers" in the New Jersey National Guard. [Second Amended Complaint ¶ 43.] In one communication, dated March 27, 2014, Undersheriff Bay wrote that he "believe[d] Officer Monaghan may be . . . abusing the system" after indicating that Plaintiff had been on military leave for 23 of the first 40 working days of 2014 and that he would be on military leave for the entire month of April—which Plaintiff notified GCSO about shortly after his shift crew had been ordered to switch from day shift to night shift for the month of April. [*Id.*, Ex. G.] In response, Plaintiff alleges that GCSO changed its practice by which Sheriff's Officers would bid for shifts by

seniority and began "award[ing] sought-after shifts to less senior officers," which Plaintiff argues "created a conflict between Plaintiff's work schedule" and his "orders to appear for military duty." [*Id.* ¶¶ 45, 47.]

The New Jersey National Guard ultimately provided GCSO with an Inactive Duty Performance Certificate on January 23, 2014, putting the matter to rest by confirming that Plaintiff's training on December 5, 2013, was for inactive duty training. [Defendants' Statement of Facts ¶ 90.] On February 4, 2014, Plaintiff was issued a Preliminary Notice of Disciplinary Action for sending an insubordinate email on December 23, 2013. [Defendants' Statement of Facts ¶ 94.] Once the notice was finalized later that month, Plaintiff was issued a 20-day suspension. [*Id.* ¶¶ 96, 98.] Plaintiff sought an internal appeal with Civil Service, but ultimately withdrew his appeal on October 11, 2017. [*Id.* ¶ 99.] Plaintiff testified that he served some of his 20-day suspension in 2016 and some in 2017. [Plaintiff's Statement of Facts ¶ 33.]

Prior to initiating the present action, Plaintiff filed a USERRA Form 1010 claim with the U.S. Department of Labor ("USDOL") on February 18, 2014, alleging harassment and discrimination in relation to his military obligations. [Defendants' Statement of Facts ¶¶ 103–104.] However, the USDOL issued its findings on April 25, 2014, that it did not find evidence to support a violation of USERRA. [*Id.* ¶ 109.] In the Second Amended Complaint, Plaintiff alleges that GCSO's unlawful discriminatory conduct continued through 2016, and he describes two other incidents, in particular: first, that "Plaintiff was written up for failing to properly display his badge number," despite the fact that many other officers

displayed their badge numbers in the same manner as Plaintiff; second, that Plaintiff was "verbally reprimanded and threatened with a write up" for delegating an assignment to a junior officer. [Second Amended Complaint ¶¶ 49, 51.] Plaintiff alleges that both later incidents constitute unlawful harassment on the basis of his protected military status in violation of USERRA. [*Id.* ¶¶ 50, 52.]

## II.   PROCEDURAL BACKGROUND

Plaintiff filed a complaint in this action on February 9, 2018, in the Superior Court of New Jersey, initially alleging violations of New Jersey law only, including the New Jersey Law Against Discrimination ("NJLAD"), the New Jersey Conscientious Employee Protection Act ("NJCEPA"), the New Jersey Constitution, and the New Jersey Civil Rights Act of 2004. [Docket No. 1, Ex. A.] Plaintiff was granted leave to add a federal law claim under USERRA and filed an Amended Complaint with the Superior Court on October 12, 2018. [Docket No. 1, Ex. B.] As of October 19, 2018, Superior Court Judge Jean S. Chetney dismissed, with prejudice, each of Plaintiff's state law claims. [Docket No. 1, Ex. C.] With Plaintiff's only remaining claim being his USERRA claim, Defendant filed a Notice of Removal with this Court on October 22, 2018. [Docket No. 1.]

On removal, Defendants requested that this Court grant leave to file a proposed motion to dismiss. [Docket No. 10.] The Court held a pre-motion conference on December 12, 2018, at which Plaintiff was Ordered to file a Second Amended Complaint within 14 days. [Docket No. 18.] Plaintiff filed the Second Amended Complaint on December 26, 2018. [Docket No. 20.] Two days later, on

December 28, 2018, Plaintiff's counsel informed the Court that Plaintiff was being deployed to Qatar, and as a result the Court administratively terminated this action "with leave to return this case to the active docket upon Plaintiff's return from overseas deployment." [Docket No. 23.] In February 2020, Plaintiff notified the Court of his return to the U.S. and the case was returned to active status. [Docket Nos. 25, 26.] The matter then continued with pre-trial discovery, which is now complete. [Docket No. 50.]

## III.   JURISDICTION

This Court has jurisdiction over the present action pursuant to 18 U.S.C. § 1331, as Plaintiff alleges a cause of action arising under the laws of the United States, specifically, USERRA, codified at 38 U.S.C. §§ 4301–4335.

## IV.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it might impact the "outcome of the suit under the governing law." *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. *Id.* Thus, in considering a motion for summary judgment, the threshold inquiry before the Court is "whether there is the need for a trial—whether, in other words, there are any genuine factual

issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The movant bears the initial burden of showing through the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits "that the non-movant has failed to establish one or more essential elements of its case." *Connection Training Servs. v. City of Phila.*, 358 F. App'x 315, 318 (3d Cir. 2009). "If the moving party meets its burden, the burden then shifts to the non-movant to establish that summary judgment is inappropriate." *Id.*

In the face of a properly supported motion for summary judgment, the non-movant's burden is rigorous. They "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995); *accord Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010) (noting that "speculation and conjecture may not defeat summary judgment") (*citing Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009)).

## B.   USERRA

Pursuant to USERRA, "[a]n employer may not discriminate in employment against or take any adverse employment action against" an employee who qualifies under the statute. 38 U.S.C.A. § 4311(b). USERRA clearly states which members of the military qualify:  "[a] person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service

in a uniformed service." *Id.* § 4311(a). Further, USSERA expressly defines the term

"service in a uniformed service" with respect to what forms of military service are

protected from discrimination under the federal statute, in relevant part, as:

> [T]he performance of duty on a voluntary or involuntary basis in a uniformed service under competent authority and includes active duty, active duty for training, initial active duty for training, inactive duty training, full-time National Guard duty, State active duty for a period of 14 days or more, State active duty in response to a national emergency declared by the President. . .

38 U.S.C. 4303(13). Even further, USERRA's implementing regulations expressly

clarify that not all military service in the National Guard is considered "service in the

uniformed services" pursuant to USERRA:

> The National Guard has a dual status. It is a Reserve component of the Army, or, in the case of the Air National Guard, of the Air Force. Simultaneously, it is a State military force subject to call-up by the State Governor for duty not subject to Federal control, such as emergency duty in cases of floods or riots. **National Guard members may perform service under either Federal or State authority, but only Federal National Guard service is covered by USERRA**.
>
> (a) National Guard service under Federal authority is protected by USERRA. Service under Federal authority includes active duty performed under Title 10 of the United States Code. Service under Federal authority also includes duty under Title 32 of the United States Code, such as active duty for training, inactive duty training, or full-time National Guard duty.
>
> (b) National Guard service under authority of State law is not protected by USERRA. However, many States have laws protecting the civilian job rights of National Guard members who serve under State orders. Enforcement of those State laws is not covered by USERRA or these regulations.

20 C.F.R. § 1002.57 (emphasis added).

An employer "shall be considered to have engaged in actions prohibited" by

USERRA "if the person's membership, application for membership, service,

application for service, or obligation for service in the uniformed services **is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership**, application for membership, service, application for service, or obligation for service." 38 U.S.C. § 4311(c)(1) (emphasis added). Thus, USERRA, "by its own terms, establishes a two-step burden-shifting framework by which to analyze [claims of discrimination]." *Murphy v. Radnor Twp.*, 542 F. App'x 173, 176 (3d Cir. 2013). First, the burden is on the plaintiff alleging discrimination to show that their "military service was a substantial or motivating factor in the adverse employment action." *Id.* (*quoting Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001)). In *Murphy* the Third Circuit, citing the Eleventh Circuit, further clarified what constitutes a "motivating factor" in the context of evaluating a USERRA discrimination claim:

> A motivating factor does not mean that it had to be the sole cause of the employment action. Instead, it is one of the factors that a truthful employer would list if asked for the reasons for its decision. Indeed, [m]ilitary status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration.

*Id.* at 177 (*quoting Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005) (internal quotation marks and citations omitted)).

If the plaintiff meets his burden at step-one of the USERRA framework, "the burden of proof then shifts to the employer, who must prove that it would have taken the adverse action for non-discriminatory reasons, regardless of the employee's [protected] military service." *Id.* (*citing Sheenan*, 240 F.3d at 1013). The applicable

standard of proof that the employer must meet at step-two of the USERRA

framework is known as the "but for" test:

> All that is meant [by this standard] is that if the [employer] had two reasons
> for taking an adverse action against the [employee], one of them forbidden by
> the statute and the other not, and the [employer] can show that even if the
> forbidden one had been absent the adverse action would still have been taken,
> the [employee] loses.

*Id.* (*quoting Madden v. Rolls Royce Corp.*, 563 F3d 636, 638 (7th Cir. 2009)).

## V.   ANALYSIS

In support of their Motion for Summary Judgment [Docket No. 54],

Defendants assert four main arguments:  (1) that Plaintiff's claim fails because

USERRA does not protect inactive duty training pursuant to state law authority; (2)

that Plaintiff's military service was not a motivating or substantial factor in Plaintiff's

discipline; (3) that Plaintiff's discipline would have occurred regardless of his

USERRA-protected military service; and (4) that Defendant Knestaut cannot be

liable under USERRA because there are insufficient facts alleged to implicate his

individual liability. [Docket No. 54-1 ("Defendants' Brief"), at 11–21.] The Court

will address each of these arguments in turn.

### A.   Plaintiff's Inactive Duty Training on December 5, 2013, Is Not Protected Military Service Under USERRA

The parties do not dispute that the Inactive Duty Performance Certificate,

ultimately provided to GCSO by the New Jersey National Guard on January 23,

2014, "confirmed that Plaintiff's December 5, 2013[,] military service was for

Inactive Duty Training, not Active Duty," and according to Plaintiff's sworn

testimony, military training on that day was specifically for readiness management. [Defendants' Statement of Facts ¶ 90, 92; Plaintiff's Response to Defendants' Statement of Facts ¶ 90, 92.] The parties also do not dispute that Plaintiff testified that he was required to attend the December 5, 2013, military training under the authority of state law. [*Id.* ¶ 37.] The Court finds that based on the record, the December 5, 2013, training day was pursuant to the authority of state law, such that it falls outside the ambit of protected military service under USERRA.

As stated above, Section 4303(13) of USERRA specifies that only certain military service in the National Guard is protected. The Court finds that Plaintiff's training for inactive duty with the New Jersey National Guard on December 5, 2013, does not fall within any of USERRA's expressly protected categories of military service.[1] Looking to USERRA's implementing regulations regarding state National Guard service, it is clear that only "National Guard service under Federal authority is protected by USERRA," and National Guard service pursuant to Federal authority "includes duty under Title 32 of the United States Code, such as active duty for training, inactive duty training, or full-time National Guard duty." 20

---

[1] Specifically, the Court finds that Plaintiff's inactive duty training by the New Jersey National Guard on December 5, 2013, did not qualify as  "active duty, active duty for training, initial active duty for training, inactive duty training [pursuant to federal authority], full-time National Guard duty, State active duty for a period of 14 days or more, [or] State active duty in response to a national emergency declared by the President"—those military statuses expressly protected under 38 U.S.C. 4303(13). The Court also agrees with Defendants' contention that since Plaintiff was a full-time GCSO employee on December 5, 2013, he "was not engaged in **full-time** military services with the New Jersey National Guard." [Defendants' Brief at 13 (emphasis in original).]

C.F.R. § 1002.57(a). By contrast, National Guard service, including inactive duty training, "under authority of State law is not protected by USERRA." *Id.* § 1002.57(b). Thus, the Court finds that the distinction is clear—inactive duty training by the New Jersey National Guard is covered by USERRA *only* when it is performed pursuant to federal authority.

Plaintiff attempts to avoid this straightforward conclusion by arguing that his inactive duty training on December 5, 2013, was protected Title 32 military duty under USERRA, and even though the training was technically "ordered" pursuant to state law authority (*i.e.*, by the Governor of New Jersey), Plaintiff was "following orders to engage in duty that has been determined by the President's chain-of-command to be necessary for homeland security and/or national defense and is being ordered to perform that duty pursuant to federal law and regulations governing the operation of the national guard." [Docket No. 62 ("Plaintiff's Brief"), at 9.] Not only does this argument attempt to muddy the clear distinction set forth by USERRA's implementing regulations between National Guard service performed pursuant to federal versus state law authority, but Plaintiff also cites no legal authority or evidence in support of his argument. In making the argument that his December 5, 2013, training day was really pursuant to federal authority—even if technically "ordered" by the state governor—Plaintiff relies almost entirely on the fact that his December 5, 2013, training was for "'Code 71 Readiness Management Period (RMP)' support training" and that National Guard Regulation 680-1 "confirms that Code 71 RMP training is one of the activities covered in the

16

regulations." [*Id.* at 11.] However, the Court agrees with Defendants that "Plaintiff has not . . . establish[ed] that the activities contained in NRG 680-1 are *exclusive* to federal training exercises pursuant to the regulations and authority of the Office of the Secretary of Defense." [Docket No. 65 ("Defendants' Reply Brief"), at 3 (emphasis added).]

Given USERRA's clear distinction between National Guard service pursuant to the authority of federal versus state law, the Court is unpersuaded by Plaintiff's argument. Undoubtedly, the functions, activities, and objectives of National Guard service and training at the federal versus the state levels likely will overlap in many significant regards. It certainly cannot be the case that any National Guard training pursuant to the authority of state law, including that for inactive duty as occurred here, automatically becomes USERRA-protected military service simply because the training encompasses certain drills and/or directives that are also required at the federal level. Plaintiff also suggests that the Code 71 RMP training is paid for in part by federal funding. [Plaintiff's Brief at 11.] However, it also cannot be the case that any National Guard training mandated by state law becomes a USERRA training if it receives a dime of federal funding. This would ignore USERRA's clear distinction between military service commanded by federal versus state law authority, and to put it simply, is not what the federal statute or its implementing regulations provide. When National Guard service is performed pursuant to state law authority, USERRA expressly allows for state anti-discrimination laws to govern. Plaintiff has also already had an opportunity to assert his state law discrimination claims in New

Jersey Superior Court. In any event, the Court finds that Plaintiff has failed to meet his burden to prove that the December 5, 2013, training day qualifies as protected military service under USERRA.

> ### B.   Whether Plaintiff's USERRA-Protected Military Service Was a Motivating Factor for His 20-Day Suspension (USERRA Step-One)

Because the December 5, 2013, training day is not protected military service under USERRA, the question at step-one of the USERRA framework then becomes whether Monaghan can meet his burden to show that his allegations of discrimination encompass other aspects of his military service that were/are protected under USERRA, and that such USERRA-protected military service was a motivating or substantial factor in GCSO's decision to suspend him for 20 days. To meet his burden at step-one of the USERRA framework, Plaintiff may prove "[t]he factual question of discriminatory motivation or intent . . . by either direct or circumstantial evidence," and "[d]iscriminatory motivation . . . may be reasonably inferred from a variety of factors, including proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses." *Sheehan*, 240 F.3d at 1014.

Defendants argue that this case is "[a]lmost identical to *Bradberry*"

18

[Defendants' Brief at 15], a Fifth Circuit case involving a dispute between a reservist for the U.S. Army Reserve and his employer, in which the employer terminated the reservist's employment for insubordination after he failed to provide the required documentation for his military service. *Bradberry v. Jefferson Cty., Tex.*, 732 F.3d 540, 543 (5th Cir. 2013). On appeal to the Fifth Circuit, the former employee argued that he was entitled to summary judgment based on an earlier finding by an Administrative Law Judge ("ALJ") that he was "discharged due to a disagreement about military service," and according to the reservist, the ALJ's finding collaterally estopped his former employer from relitigating the issue before the District Court. *Id.* at 551. However, the Fifth Circuit rejected the former employee's argument, concluding that the ALJ's finding was "not the equivalent of a finding that the County was motivated by his military status to discharge him." *Id.* at 552. This Court agrees with Monaghan that *Bradberry* will have very limited applicability in the current dispute, given the different procedural posture, the fact that the collateral estoppel issue is not asserted here, and even though there are some factual similarities between the present action and *Bradberry*, there are many facts in the present dispute that are unique to Monaghan's case.

Plaintiff maintains that he "is not alleging that his discipline (the adverse employment action) was solely limited to the December 5, 2013, inactive training day, but again, that this incident was a microcosm of the problem that Bay and Knestaut had with Plaintiff's overall military service." [Plaintiff's Brief at 6.] Defendants do not dispute that some of Plaintiff's military service during the term of

his employment with GCSO qualified under USERRA and take no issue with Plaintiff's argument that his overseas deployment to Iraq, Egypt, Qatar, and Albania on several different occasions was pursuant to federal authority. [Plaintiff's Brief at 16.] Plaintiff also broadly alleges that he was treated more harshly than other military service personnel making similar requests for military leave, and that GCSO suddenly stopped accepting the types of memoranda he had been providing for years when making military leave requests. Plaintiff even alleges two incidents of harassment after the December 5, 2013, military training day when he was unfairly disciplined for improperly displaying his badge number (even though other officers displayed their badge numbers the same way as Plaintiff) and for delegating an assignment to a more-junior officer. The Court finds that Plaintiff's allegations of discrimination under USERRA are broader than the December 5, 2013, inactive duty training day.

For the reasons that follow, the Court finds that there is a genuine (and narrow) issue as to a material fact, specifically, whether GCSO was motivated by Plaintiff's broader USERRA-protected military service in making the decision to suspend him from employment for an allegedly excessive 20 days. *See infra* Section V(C). In his opposition brief, Plaintiff correctly recognizes that his argument depends in large part on circumstantial evidence to prove that Defendants' non-discriminatory reason for his discipline (*i.e.,* insubordination) is pretextual. [Plaintiff's Brief at 13.] True, and the evidentiary hurdle Plaintiff must clear to reach a favorable jury verdict based on such circumstantial evidence will be quite

demanding, considering the timing and nature of his second email to Undersheriff Knestaut on December 23, 2013—an email Plaintiff must recognize was ill-conceived to say the least—and taking into consideration this Court's finding that his December 5, 2013, training is not covered military service under USERRA. Plaintiff may be able to evade an unfavorable decision on a motion summary judgment, but the more difficult issue—whether the circumstantial evidence is strong enough to reasonably infer a discriminatory motive by GCSO—remains for the jury to decide.

### C. Whether Plaintiff Would Have Been Suspended for 20 Days Absent His USERRA-Protected Military Service (USERRA Step-Two)

If Plaintiff is able to overcome his burden at step-one of the USERRA framework, the burden then shifts to GCSO at step-two to show that they would have issued the 20-day suspension regardless of Plaintiff's broader USERRA-protected military service. Defendants are correct that the Court "does not sit as a super-personnel department to oversee a company's employment practices" in adjudicating USERRA claims. [Defendants' Brief at 18 (citations omitted).] The Court also agrees with Defendants that the second email sent by Plaintiff to Undersheriff Knestaut on December 23, 2013, was inappropriate and insubordinate on its face—no one could find otherwise.

In this Court's mind, Plaintiff's strongest argument is that his 20-day suspension was/is excessive in light of all of the circumstances. [Plaintiff's Brief at 18.] The parties' briefs demonstrate that whether Plaintiff's suspension was excessive, a fact this Court finds very well may impact the outcome of the current

controversy, remains largely in dispute. Plaintiff first argues that if his insubordinate email on December 23, 2013, was the real reason for his suspension, it would not have taken until February 4, 2014, for the suspension to be finalized. [*Id.* at 18–19.] However, Defendants argue that several different factors contributed to the 43-day delay, including Plaintiff's failure to provide an appropriate military order for his service when requested, GCSO's ongoing investigation, and that Plaintiff's "delay" argument, if meritorious, should have been pursued "through established processes under his union's collective bargaining agreement." [Defendants' Reply Brief at 4.] Next, Plaintiff argues that his insubordinate email must be read in the context of his supervisor's continued, condescending questioning just hours before the Christmas holiday, constituting ongoing harassment of Plaintiff by Undersheriff Knestaut that caused Plaintiff to break his composure. [Plaintiff's Brief at 19–20.] However, Defendants maintain that regardless of the underlying circumstances, Plaintiff "wrote what he wrote," and what he wrote violates GCSO's Rules of Conduct against insubordinate behavior. [Defendants' Reply Brief at 5.]

The parties do not dispute that Sherriff Morina "testified that the Sherriff's department follows progressive discipline and for Monaghan to have received a twenty (20) day suspension, he must have had something in his file." [Plaintiff's Brief at 20 (*citing* Plaintiff's Statement of Facts ¶ 136).] The parties also do not dispute that there was no "something else" in Plaintiff's file as far as prior incidents of suspension or any "forfeiture of time prior to the December 5, 2013, military [training] day," which appears to support Monaghan's conclusion that "a twenty (20) day suspension

. . . for one instance of insubordination is excessive." [*Id.* at 20–21.] Plaintiff argues that this inference is further supported by the fact that another officer was insubordinate towards Undersheriff Knestaut, "but only resulted in that Officer receiving a performance notice," as well as Undersheriff Bay's indication to Plaintiff's supervisors at the New Jersey National Guard that Monaghan "seemed to have military orders more than other officers" and may be manipulating his military training dates to get out of work with GCSO. [*Id.*]

The record presently before the Court consists of an extensive amount of circumstantial evidence that the jury may weigh in favor of either party, especially with regard to whether Plaintiff's 20-day suspension was excessive. However, making evidentiary findings is not the role of this Court in deciding a motion for summary judgment. The jury may find that Monaghan failed to follow established procedure in requesting military leave as required by GCSO policy, and even if Plaintiff's 20-day suspension was excessive, as long as it was not motivated by Plaintiff's USERRA-protected military service, it is not unlawful under USERRA. Further, Plaintiff's USERRA-protected military service also appears to have significantly pre-dated the heated email exchange that occurred in December 2013 where Plaintiff was clearly insubordinate to Undersheriff Knestaut.

What is clear to the Court based on the record presently before it is that the road ahead of Plaintiff is not an easy one for sure, and Plaintiff must overcome

significant evidentiary hurdles to reach a favorable verdict in this case.[2] Nevertheless, the issue as to whether GCSO would have issued a 20-day suspension regardless of Plaintiff's broader, USERRA-qualifying military service, primarily consisting of his prior deployment overseas but excluding the inactive duty training by the New Jersey National Guard on December 5, 2013, is a disputed question of material fact that must be left to the jury.

### D. Defendant Knestaut Cannot be Liable Under USERRA Based on the Facts Alleged

Defendants' final argument is that "Undersheriff Knestaut cannot be held individually responsible under USERRA" because "Undersheriff Knestaut does not have the individual power to hire or fire the employees within the Sheriff's Office . . . [a]ny decision to hire or terminate an employee is required to be discussed with the Sheriff." [Defendants Brief at 21 (*citing Coulson v. Town of Kearny,* Civ. No. 07-5893 (PGS), 2010 WL 331347, at *7 (D.N.J. Jan. 19, 2010)).] Plaintiff failed to respond to this argument in his opposition brief and did not otherwise provide any evidence to show that Undersheriff Knestaut could, in fact, individually alter his employment

---

[2] There is also the issue of what damages Plaintiff would be entitled to if he were to prevail on his USERRA claim. In the Second Amended Complaint, Plaintiff seeks liquidated damages pursuant to 38 U.S.C. § 4323(d) [Docket No. 20 ¶ 61], which, if successful, could equal up to the amount of lost wages or benefits suffered because of GCSO's failure to comply with USERRA—which in Plaintiff's case, could equal up to an additional 20 days of backpay, provided that the Court determines that GCSO's failure to comply with USERRA was willful. 38 U.S.C. § 4323(d)(1)(B)–(C). Beyond that there is no matter of right to attorneys' fees and costs. 38 U.S.C. § 4323(h)(2). In any event, any attorneys' fees and costs would have to be reasonable and commensurate with the narrow results achieved. *See Tobin v. Gordon*, 623 F. Supp. 2d 538, 543 (D. Del. 2009).

status with GCSO. Accordingly, the Court finds that Plaintiff has abandoned his claim with respect to Defendant Knestaut. *See Lutz Surgical Partners PLLC v. Aetna, Inc.*, Civ. No. 15-02595 (BRM/TJB), 2021 WL 2549343, at *15 (D.N.J. June 21, 2021) (explaining that on summary judgment a party's failure to respond to an argument can be considered an admission of the other party's argument) (citations omitted). Considering that Defendants' argument with respect to Defendant Knestaut is well-founded in law and fact, as well as Plaintiff's apparent admission, the Court shall grant Defendants' motion with respect to the USERRA claim asserted again him.

## VI.   CONCLUSION

Material issues of fact remain, including whether Plaintiff's USERRA-protected military service—which does not include the military training on December 5, 2013—motivated GCSO's decision to suspend him for 20 days (relevant at step-one of the USERRA framework), as well as whether the 20-day suspension was excessive in light of all of the circumstances (relevant at step-two of the USERRA framework).

Accordingly, the Court shall **DENY** Defendants' Motion for Summary Judgment [Docket No. 54], other than with respect to the USERRA claim against individual Defendant Knestaut. Defendants' Motion for Summary Judgment [Docket No. 54] is **GRANTED**, in part, in that limited respect, and Plaintiff's USERRA claim against Defendant Knestaut fails. An accompanying Order, as of

today's date, shall issue.

<u>April 19, 2022</u>        <u>s/Renée Marie Bumb</u>
Date             Renée Marie Bumb
                U.S. District Judge